| | |
|---|---|
| **UNITED STATES DISTRICT COURT** | |
| **MIDDLE DISTRICT OF PENNSYLVANIA** | |
| SHANNON MARIE PARCHINSKI, *Individually* | : |
| 315 15TH AVENUE | : |
| SCRANTON, PA 18504 | : |
|            *Plaintiff* | : |
| | : |
| V. | : |
| | : |
| LACKAWANNA COUNTY, *Municipality* | : |
| 200 N. ADAMS AVENUE | : CIVIL ACTION |
| SCRANTON, PA 18503 | : |
| | : JURY TRIAL |
| DEMANDED | : |
| WARDEN VINCENT MOONEY, *Individually and in* | : |
| *his* | : |
| *Official Capacity as Corrections Officer, Warden and* | : |
| *Supervisor* | : |
| LACKAWANNA COUNTY PRISON | : No. 3:18-CV-700 |
| 1371 N. WASHINGTON AVENUE | : |
| SCRANTON, PA 18509 | : |
| | : |
| WARDEN ROBERT MCMILLEN, *Individually and* | : |
| *in his Official Capacity as Corrections Officer,* | : |
| *Warden and Supervisor* | : |
| LACKAWANNA COUNTY PRISON | : |
| 1371 N. WASHINGTON AVENUE | : |
| SCRANTON, PA 18509 | : |
| | : |
| THOMAS STAFF, *Individually and in his Official* | : |
| *Supervisory* | : |
| *Capacity as Administrator of the Lackawanna County* | : |
| *Prison, and Supervisor of the Female Work* | : |
| *Release Program* | : |
| LACKAWANNA COUNTY PRISON | : |
| 1371 N. WASHINGTON AVENUE | : |
| SCRANTON, PA 18509 | : |
| | : |

1

SERGEANT KATE FANNING, *Individually and in his* :
*Official Supervisory Capacity as Corrections Officer* :
*and Supervisor* :
LACKAWANNA COUNTY PRISON :
1371 N. WASHINGTON AVENUE :
SCRANTON, PA 18509 :
 :
SERGEANT ISAAC HEBRON, *Individually and in his* :
*Official Supervisory Capacity as Corrections Officer* :
*and Supervisor* :
LACKAWANNA COUNTY PRISON :
1371 N. WASHINGTON AVENUE :
SCRANTON, PA 18509 :
 :
C/O JOSEPH BLACK, *Individually and in his* :
*Official Capacity as Corrections Officer and Supervisor* :
LACKAWANNA COUNTY PRISON :
1371 N. WASHINGTON AVENUE :
SCRANTON, PA 18509 :
 :
C/O JOHN SHNIPES, *Individually and in his* :
*Official Capacity as Corrections Officer and Supervisor* :
LACKAWANNA COUNTY PRISON :
1371 N. WASHINGTON AVENUE :
SCRANTON, PA 18509 :
 :
C/O JEFFREY STAFF, *Individually and in his* :
*Official Capacity as Corrections Officer and Supervisor* :
LACKAWANNA COUNTY PRISON :
1371 N. WASHINGTON AVENUE :
SCRANTON, PA 18509 :
 :
CORRECTIONS OFFICER JOHN/JANE DOE(S) :
                  *Defendant*

## COMPLAINT

AND NOW, comes Plaintiff, Shannon Parchinski, by and through her Counsel, Matthew T. Comerford, Esq., who files this Complaint, averring as follows:

## PRELIMINARY STATEMENT

1. At all times relevant to this Complaint, Lackawanna County ("Defendant County") acted as the owner and administrator of the Lackawanna County Prison ("LCP").

2. For over two decades, LCP has been the scene of regular, frequent, and unending of sexual harassment and sexual assault of female inmates.

3. During this time, Defendant County's highest ranking officials knew that countless female inmates in that facility were repeatedly subjected to sexual harassment and sexual assault by male correctional staff.

4. Despite this knowledge, Defendant County and the Lackawanna County Prison Board, and these entities' policy makers, administrators, and correctional staff, utterly ignored their responsibility to prevent the systematic sexual harassment and sexual abuse of female inmates and to ensure their safety.

5. These individuals and entities perpetuated the systemic sexual harassment and abuse of female inmates for decades by engaging in and maintain a culture of silence, cover-up, and retaliation at LCP which allowed the abuse to fester and continue indefinitely and which violated the Constitutional Rights of female inmates.

6. Plaintiff, Shannon Marie Parchinski, a prior inmate in LCP, was repeatedly sexually harassed and assaulted by numerous corrections officers over the course of a decade and was specifically victimized by Defendant County's custom of culture of acquiescing to the sexual harassment and sexual abuse of female inmates.

7. As a result of Defendants' extraordinary misconduct, Plaintiff, suffered substantial damages including but not limited to the following: emotional pain and suffering and financial losses caused.

## JURISICTION

8. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully and specifically set forth herein.

9. This is a civil action seeking damages against Defendants for the deprivation of Plaintiff's rights secured under Federal Law, the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and under Pennsylvania State Law.

10. While Plaintiff was subject to Pre-Trial and/or Post-Trial Detention in LCP, the separate and/or conspired, willful, callous, reckless, grossly negligent, and deliberately indifferent acts and/or omissions to act of the Defendants, acting under the Color of State Law, proximately caused the violation of Plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution- specifically Plaintiff's rights to due process, to be houses in a humane facility, to be free from sexual harassment and assault, to be free from cruel and unusual punishment, to bodily integrity, and to privacy – protected under 42 U.S.C. § 1983.

11. Federal jurisdiction is established pursuant to 28 U.S.C. § 1331 and 42 U.S.C. Section 1983. Supplemental jurisdiction is established over State Law Claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper United States District Court of the Middle District of Pennsylvania under 28 U.S.C. § 1391 because it is the jurisdiction in which Plaintiff and all the Defendants reside in/or maintain their personal place of business.

## **PARTIES**

13.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully and specifically set forth herein.

14.     Plaintiff is an adult individual currently residing at 315 15th Avenue, Scranton, Pennsylvania, 18504.

15.     Defendant, County is a municipality, organized by and through the Commonwealth of Pennsylvania, that regulates and implements customs, policies and practices as well as directs, manages, and controls LCP, and its customs, policies and practices, and employs and/or employed all individually named Defendants. At all relevant times, Defendant Lackawanna was acting under color of state law.

16.     Defendant Vincent Mooney ("Defendant Mooney" and Defendant Robert McMillan ("Defendant McMillan") were, at various times relevant herein, wardens and supervisors at LCP, employed by Defendant County and under the command and authority of Defendant County, who regulated and implemented customs, policies and practices of Defendant Lackawanna and LCP.  At all times relevant hereto Defendants Mooney and McMillen acted under color of state law pursuant to customs, policy or practice of Defendant Lackawanna.  Defendants Mooney and McMillen are being sued in their individual, supervisory, policymaking, and all other official capacities as prior warden of the Lackawanna County Prison.

17.     Defendant Thomas Staff is and/or was an administrator employed by Defendant County and under the command or authority of Defendant County, who regulated and implemented customs, policies and practices of Defendant County, LCP, Defendant County's Work Release Program, and Defendant County's House Arrest Program. At all times relevant hereto Defendant Thomas Staff acted under color of state law pursuant to customs, policy or practice of Defendant County. Defendant Thomas Staff is being sued in his individual, supervisory, policymaking and all other official capacities as an administrator of LCP, Defendant County's Work Release Program, and Defendant County's House Arrest Program.

18.     Defendant Kate Fanning ("Defendant Fanning") and Defendant Isaac Hebron ("Defendant Hebron") are and/or were Sergeants employed by Defendant County and LCP and under the command and authority of Defendant County, who were, at all times relevant hereto, acting under Color of State Law pursuant to custom, policy, or practice of the LCP and/or Defendant County. Defendants

5

Manning and Hebron are being sued in their individual, supervisory, policymaking, and all other official capacities as sergeants and corrections officers of the LCP.

19. Defendant Joseph Black ("Defendant Black"), Defendant John Shnipes ("Defendant Shnipes"), and Defendant Jeffrey Staff, are and/or were corrections officers employed by Defendant County and LCP, and under the command and authority of Lackawanna, who, at all times relevant hereto, acted under Color of State Law pursuant to custom, policy, or practice of LCP and/or Defendant County. These defendants are being sued in their individual, supervisory, and all other official capacities as corrections officers of the LCP.

20. Individual Defendants, John/Jane Doe(s) I-V, are and/or were Corrections Officer and/or other individuals employed by Defendant County and LCP, and under the command and authority of Defendant Lackawanna, who, at all times relevant hereto, were acting under Color of State Law pursuant to custom, policy, or practice of LCP and/or Defendant County. Defendants, John/Jane Doe(s) I-V, are being sued in their individual, supervisory, policymaking, and all other official capacities as corrections officers, employed by Defendant County.

21. Individual Defendants John and Jane Doe I-V will be added as parties to the extent Discovery reveals their identities.

22. At all times relevant to this Complaint, all Defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to Plaintiff.

## FACTS

23. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully and specifically set forth herein.

24. Defendant County and LCP have a long history of regular and pervasive misconduct which includes, but is not limited to corruption, sexual assaults, physical assaults, inhumane prison conditions, and violations of the Constitutional rights of inmates.

25. As far back as 2002, Defendant Lackawanna and LCP have reports and incidents associated with sexual harassment, rape, sexual assault of female inmates.

26. Defendant Shnipes was repeatedly sexually harassing and assaulting female inmates at the Lackawanna County Prison. This was common knowledge at the prison. Correctional staff and administrative staff, including policymakers at the prison knew of Defendant Shnipes systematic sexual abuse of female inmates and despite this knowledge allowed him to continue to work as a corrections officer at the LCP until the year 2013.

27. Defendant Black repeatedly sexually harassed and sexually assaulted numerous female inmates at LCP. This was known by correctional staff and administrative staff including policymakers at LCP. Despite this knowledge, Defendant Black was allowed to work at LCP until the year 2011. Ultimately, Defendant Black pled guilty to sexually assaulting five female inmates while he was a correctional officer at the LCP and he received a state prison sentence of four (4) to eight (8) years.

28. A prior lieutenant at LCP, Verne Dittfield, now deceased, repeatedly sexually harassed and sexually assaulted female inmates at LCP. The female inmates that customarily engaged in sexual activity with Dittfield were referred to as "Daddy Dittfield's Girls" by employees at LCP. Dittfield's sexual harassment and sexual assaults of female inmates was known by correctional staff and administrators at LCP, including policymakers and despite this knowledge he was allowed to continue his employment there without consequence.

29. The inmates at the Lackawanna County Prison have been continuously subjected to sexual assaults for over a decade. The sheer number of assaults is evidence that those of authority had knowledge of the systematic sexual abuse of female inmates by male correctional staff. This conduct includes but is not limited to the following:

    a) Verne Dittfield's continuous sexual assaults of female inmates, who other guards referred to as "Daddy Dittfield's Girls";

    b) Jennifer Pasco's sexual assault by Defendant Black;

    c) April Pleasant's sexual assault by Defendant Black;

    d) Shawna Mecca's sexual assault by Defendant Black;

    e) Allison Demy's sexual assault by Defendant Black;

f) Amanda Smith's sexual assault by Defendant Black;

g) Laquonne Sarden's sexual assault by Defendant Black;

h) Defendant Shnipes' sexual assault Selena Schooly;

i) Defendant Shnipes' sexual assault of Shawna Mecca;

j) Defendant Shnipes' sexual assault of Mary Slaboda;

k) Defendant Shnipes' sexual assault of Jamie Tompkins;

l) Defendant Shnipes' sexual assault of Joanne Perry;

m) Defendant Shnipes' sexual assault of Tammy Fox;

n) Defendant Shnipes' sexual assault of Lynn Rice

o) Defendant Shnipes' sexual assault of Michelle Loch

p) Defendant McGuire's sexual assault of Jamie Tompkins;

q) Defendant McGuire's sexual assault of an unknown female from Lourdesmont;

r) Captain William Shandly's sexual assault of Jamie Tompkins;

s) Correctional Officer James Walsh's sexual assault of Jamie Tompkins;

t) Arthur McPhillips' sexual assault of Tammy Fox;

u) Michelle Weiss' sexual assault by Correctional Officer Eddie Williams;

v) Mark Johnson's sexual assault of Tammy Fox;

w) Correctional Officer Paul Voglino's sexual assault of Jamie Tompkins;

    x)    James Walsh's sexual assault of Brandy Layborne;

30.    A Pennsylvania Grand Jury was convened regarding the sexual abuse of female inmates at LCP, and that Grand Jury eventually returned an indictment, stating that: "The Grand Jury conducted an investigation into allegations of systemic sexual abuse and harassment of female inmates for more than a decade at the Lackawanna County Prison ("LCP") located in Scranton, Pennsylvania. During the course of the investigation, the Grand Jury heard evidence that the following current and former correctional officers utilized their positions of authority to manipulate and dominate the female inmates, perpetuating a pervasive culture of continuous sexual abuse and harassment: John J. Shnipes ("Shnipes"), Jeffrey T. Staff ("Staff"), George R. Efthimiou ("Efthemiou"), Mark Johnson ("Johnson"), George McHale ("McHale"), Paul Voglino ("Voglino") and James Walsh ("Walsh"). Due to their status as inmates, the females were reluctant to report the abuse and harassment to anyone in authority. Fearful of repercussions or punishment, and simply wanting to survive, the females elected to endure the sexually oppressive environment as it appeared to be the "status Quo" at LCP on a day-to-day basis. … In addition to the named correctional officers herein, the Grand Jury also heard evidence that several other correctional officers or prison personnel were involved in the sexual abuse and harassment. Charges cannot be brought in those cases, however, because the statute of limitations has expired with respect to the applicable criminal charges and/or due to death of the alleged perpetrators." (Forty First Investigating Grand Jury, Investigation No. 14, Presentment No. 11, 2-9-18).

31.    Similar to many of the other victims of Institutional Sexual Assault, the Plaintiff was first incarcerated at LCP when she had just reached adulthood and was suffering from drug addiction.

32.    Plaintiff was peculiarly susceptible to sexual victimization at the hands of these uniformed perpetrators because she was addicted to heroin.

33.    At all times relevant herein, Defendant Shnipes was a prior correctional officer at the LCP who repeatedly accompanied female inmates to the recreation area ("rec"). Through his position, Defendant Shnipes had access to, and authority over, countless female inmates whom he would proposition for sex for favors. Inmates complied with Shnipes' requests and advances, they would receive favorable treatment as well as privileges and other contraband.

9

34. Plaintiff was repeatedly subjected to sexual harassment by Defendant Shnipes. Defendant Shnipes would routinely call her into the "rec" area and have her expose her breasts to him and in return she would be allowed to return from "rec".

35. On one occasion, Defendant Shnipes groped Plaintiff in the "rec" area while she bent down to get a ball. Specifically, he placed his hand on her buttocks outside her clothing.

36. Moreover, during her tenure at LCP, Defendant Shnipes would request of her to "put it on the glass." This was a slang term utilized by correctional staff including Defendant Shnipes when the correctional staff wanted female inmates to expose their breasts.

37. During her incarceration Plaintiff was roommates with Jessica White. Defendant Black would routinely enter their cell and engage in sexual relations with Ms. White in front of Plaintiff. This escalated wherein Plaintiff was forced to manually stimulate Defendant Black on one occasion. In return for not telling of Defendant Black's relations with herself or Jessica White, she would be promised cigarettes, coffee and candy. Often times she would not receive cigarettes, but Defendant Black provided Plaintiff with coffee from the bubble.[1]

38. During her incarceration at LCP from April 2010 through April 2011, Plaintiff was, on at least one occasion, placed on work release.

39. Defendants Hebron and Fanning, on one occasion after Plaintiff returned from a work release furlough at her grandparent's house, handcuffed Plaintiff as she re-entered LCP. They informed her that they knew her and Defendant Staff were either involved in an inappropriate sexual relationship or contemplated a sexual relationship. They reprimanded her, treating this victim as a perpetrator and stating that she was going to ruin Defendant Staff's career as a correctional officer. They threatened retaliation in the form of incarceration and segregation from general population in the event Plaintiff and Defendant Staff had any further contact.

40. Following this verbal assault by Defendants Hebron and Fanning, while on work release, Plaintiff was solicited by Defendant Staff to engage in a sexual

---

[1] The bubble is an area located within the prison where correctional staff monitor the prison and perform other administrative tasks.

10

relationship. Thereafter, Plaintiff met Defendant Staff at what he purported to be his mother's residence where they engaged in sexual intercourse on the couch in the living room.

41. On another occasion, after she was released from work release, but while still on supervision, Defendant Staff and Plaintiff again had sex inside the above described residence.

42. At all relevant times, Plaintiff felt compelled to engage in flirtation and sexual activity with Defendant Staff. It was the "status quo" at LCP. Furthermore, she feared retaliation from Defendant Staff's father who is named in this Complaint as Defendant Thomas Staff who was in charge of the female work release program.

43. Plaintiff was incarcerated from March 15, 2016 through June 6, 2016. During that time period Plaintiff was interviewed by Defendants Fanning and Hebron, who abused her verbally and by taking away privileges in the prison in order to get her to comply with and not report Defendant Jeff Staff.

44. Importantly, it was during this time period that it was publicly revealed that a "culture of silence" existed at the prison for years wherein employees of LCP would not reveal misconduct of each other. This included sexual relationships between inmates and staff. The Black investigation gave investigators many leads concerning potential victims.

45. During the aforementioned time period, Defendant Jeff Staff, fearing that he may be exposed approached Plaintiff while she was incarcerated again informing her not to reveal their sexual relationship. Plaintiff assured Defendant Staff that she would not and as he was walking away from her he grabbed her buttocks stating he missed her.

46. The aforementioned factual averments regarding Plaintiff constitute a continuing tort or affirmative actions that extend the abuse she suffered into the statute of limitations.

47. Plaintiff was specifically and particularly abused by Lackawanna County and its officials and employees distinctly in each of the following years: 2011, 2012, 2013, 2014, and 2015.

48. This abuse was perpetrated by a common plan, scheme, custom, and conspiracy which linked all of the affirmative actions complained of and which yields a statute of limitations which runs into June 2018.

49. The polices and customs which caused Plaintiff's injury were prevalent both in and outside of the statute of limitations and directly caused Plaintiff's injuries.

## Count I
## 42 U.S.C. § 1983
## Monell Liability
## Plaintiff v. Lackawanna County, Vincent Mooney, Robert McMillan, Thomas Staff, Kate Fanning, and Isaac Hebron

50. Plaintiff incorporates paragraphs 1 through 27 as if the same were set forth at length fully and specifically herein.

51. Defendants Mooney, McMillan, Thomas Staff, Fanning, and Hebron ("Defendant Policy Makers") are policy makers for Lackawanna County Prison and, therefore, Lackawanna County.

52. Defendant Policy Makers developed, implemented, approved, and/or maintained a number of deficient customs, policies, and practiced with deliberate indifference, which proximately caused a deprivation of Plaintiffs' Constitutional Rights.

53. Defendant Policy Makers' unconstitutional customs, policies and practices encouraged their employees, officers, and agents to believe that they could violate the Constitutional Rights of inmates and Plaintiffs within impunity, without consequence, and with explicit or tacit approval.

54. Through implementation of custom, policy, practice, ordinance, regulation and/or statements, Defendant Policy Makers, with deliberate indifference and callous disregard, caused harm to Plaintiff and similarly situated inmates in the following manners:

55. By permitting, sanctioning, either implicitly or explicitly, and/or failing to prevent, Corrections Officers to engage in unmonitored, one- on-one confrontations between male Corrections Officers and female inmates, creating a

foreseeably dangerous situation in which female inmates would be sexually and physically harassed and assaulted. Defendant policy makers permitted this to occur despite knowledge of a systemic problem concerning sexual abuse at Lackawanna County Prison.

56. By permitting, sanctioning, either implicitly or explicitly, and/or failing to prevent, intimidation and retaliation by male Corrections Officers against female inmates and other Corrections Officers who reported misconduct.

57. By permitting, sanctioning, either implicitly or explicitly, and/or failing to prevent, unsupervised and unreported job assignment being given to female inmates.

58. By permitting, sanctioning, either implicitly or explicitly, and/or failing to prevent, misconduct from occurring between Corrections Officers and inmates while on "lock down".

59. By permitting, sanctioning, either implicitly or explicitly, and/or failing to prevent, male Corrections Officers to be assigned to and request to be assigned to all female units where there would be unmonitored contact between Corrections Officers and inmates of different genders.

60. By permitting, sanctioning, either implicitly or explicitly, and/or failing to prevent, noncompliance with State and Federal Prison Laws and the Federal Prison Rape Elimination Act.

61. By permitting, sanctioning, either implicitly or explicitly, and/or failing to prevent, improper and inadequate screening, auditing, and investigation of potential Corrections Officers, Supervisors, and Wardens to be hired.

62. By permitting, sanctioning, either implicitly or explicitly, and/or failing to prevent, the deprivation of due process regarding hearings and punishment including segregation, privilege deprivation, and isolation in "the hole" of inmates.

63. Failing to train Corrections Officers in dealing with and/or reporting sexual harassment and sexual abuse of female inmates.

64. The separate and/or conspired acts and/or omission of Defendant Policy Makers, made willfully, callously, recklessly, with gross negligence, and/or with

deliberate indifference, and made under the Color of State Law, proximately caused and/or facilitated the violations of Plaintiffs' rights under the United States Constitution, Amendments IV, VIII, and XIV; 42 U.S.C.

65. 1983 Specifically, Plaintiffs' Right to Due Process, right to be free from cruel and unusual punishment, right to be housed in a humane facility, right to be free from sexual harassment, right to bodily integrity, and right to privacy were violated.

66. As a direct and proximate cause of the aforementioned acts and omissions of Defendant Policy Makers, Plaintiffs suffered the injuries and damages set forth herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

### Count II
### 42 U.S.C. § 1983
### Cruel and Unusual Punishment
### Plaintiff v. Jeff Staff, Joseph Black, and John Schnipes

67. Plaintiff incorporates paragraphs 1 through 27 as if the same were set forth at length fully and specifically herein.

68. Defendant Schnipes', Defendant Jeff Staff's, and Defendant Black's aforementioned actions of sexual assault and harassment, taken under Color of State Law constitutes a violation of the United States Constitution, Amendments IV, VIII, and XIV; 42 U.S.C. §§ 1983, Specifically, Plaintiff's Right to Due Process, right to be free from cruel and unusual punishment, right to be housed in a humane facility, right to be free from sexual harassment, right to bodily integrity, and right to privacy were violated.

69. As a direct and proximate cause of the aforementioned acts and omissions, Plaintiff suffered the injuries and damages herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

## Count III
## 42 U.S.C. § 1983
### Failure to Protect, Failure to Intervene, Failure to Report
### Plaintiff v. Thomas Staff, Isaac Hebron, Kate Fanning

70. Plaintiff incorporates paragraphs 1 through 27 as if the same were set forth at length fully and specifically herein.

71. Defendants Thomas Staff, Hebron and Fanning and John/Jane Doe ("Defendant Individuals"), directly, indirectly, intentionally, knowingly, and/or recklessly, conspired, aided, abetted, furthered, facilitated, and/or agreed to violate Plaintiff's Constitutional Rights by individual acts and/or omissions, despite a duty to intervene and/or supervise, and despite knowledge of the violation of Plaintiffs' Constitutional Rights.

72. Defendant Individuals, acting individually and/or in concert and acting under the Color of State Law, failed in their duty to supervise and intervene to prevent the violation of inmates rights and ignored with deliberate indifference the conduct described herein, thereby, violating Plaintiff's rights under the United States Constitution, Amendments IV, VIII, and XIV; 42 U.S.C. §§ 1983, 1985, 1986, 1988. Specifically, Plaintiffs' Right to Due Process, right to be free from cruel and unusual punishment, right to be housed in a humane facility, right to be free from sexual harassment, right to bodily integrity, and right to privacy were violated.

73. As a direct and proximate cause of the aforementioned acts and omissions, Plaintiff suffered the injuries and damages herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

15

## Count IV
## 42 U.S.C. § 1983
## Conspiracy
## Plaintiff v. All Defendants

74. Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

75. All Defendants directly, indirectly, intentionally, knowingly, and/or recklessly, conspired, aided, abetted, furthered, facilitated, and/or agreed to violate Plaintiffs' Constitutional Rights by individual acts and/or omissions, despite a duty to intervene and/or supervise, and despite knowledge of the violation of Plaintiffs' Constitutional Rights.

76. All Defendants, acting individually and/or in concert and acting under the Color of State Law, failed in their duty to supervise and intervene to prevent the violation of inmates rights and ignored with deliberate indifference the conduct described herein, thereby, violating Plaintiff's rights under the United States Constitution, Amendments IV, VIII, and XIV; 42 U.S.C. §§ 1983, 1985, 1986, 1988. Specifically, Plaintiffs' Right to Due Process, right to be free from cruel and unusual punishment, right to be housed in a humane facility, right to be free from sexual harassment, right to bodily integrity, and right to privacy were violated.

77. As a direct and proximate cause of the aforementioned acts and omissions, Plaintiffs suffered the injuries described herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

## Jury Demand

78. Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

79. On all counts, facts, and claims asserted herein, Plaintiffs demand a trial by jury.

Respectfully submitted,

By: *[signature]*
Matthew Comerford, Esquire
Attorney I.D. No. 89220
204 Wyoming Avenue
Scranton, PA 18503
Telephone: (570) 344-2355
Facsimile: (570) 344-1061
Attorney for Plaintiff

Dated:  March 29, 2018